**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

STELLA POULOS,

       Plaintiff,                        CASE NO. 07-CV-10738

-vs-

                                        PAUL D. BORMAN
OUTBACK STEAKHOUSE             UNITED STATES DISTRICT JUDGE
OF FLORIDA, INC., ET AL.,

       Defendants.
_____/

**OPINION AND ORDER: (1) GRANTING DEFENDANT OUTBACK'S MOTION FOR SUMMARY JUDGMENT AND (2) GRANTING DEFENDANT CANAMERA'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Canamera Building Services, Ltd.'s ("Defendant Canamera") April 30, 2008 Motion for Summary Judgment. Also before the Court is Defendant Outback Steakhouse of Florida, Inc.'s ("Defendant Outback") May 5, 2008 Motion for Summary Judgment. A hearing on these matters was held on August 7, 2008. For the following reasons the Court GRANTS Defendant Outback's Motion for Summary Judgment and GRANTS Defendant Canamera's Motion for Summary Judgment and DISMISSES Plaintiff's Second Amended Complaint.

**I. BACKGROUND**

This case arises from Plaintiff Stella Poulos' ("Plaintiff") slip and fall at Defendant Outback's Miller Road restaurant in Genesee County, Michigan.

Plaintiff is a resident of Genesee County, Michigan. (2d Amend. Compl. ¶ 1). Defendant Outback is a foreign corporation doing business in Michigan with its principal place of business in Florida. (Notice of Removal, 2). Defendant Canamera is incorporated in New York. (2d Amend.

Compl. ¶ 2a).

On May 28, 2006, Plaintiff and her son, George Poulos, were customers at Defendant Outback's restaurant. (*Id*. ¶ 4; Def. Outback Br. Ex. A, S. Poulos Dep. 28). Upon arrival at the restaurant, Plaintiff's son went to the host stand to speak with the hostess, Jessika Bayliss. (S. Poulos Dep. 29; Def. Outback Br. Ex. E, Bayliss Dep. 9). Plaintiff and her son then waited near the host stand for an available table. (S. Poulos Dep. 28). Ms. Bayliss then approached Plaintiff and her son and advised them she would take them to their table. (*Id*. 29-30).

Plaintiff and George Poulos followed the hostess to their table, Plaintiff's son was walking next to her on her left-hand side. (Def. Outback Br. Ex. B, G. Poulos Dep. 13). Before reaching their table, Plaintiff fell on the wood floor. (*Id*.; S. Poulos Dep. 30).

When asked to describe the fall, Plaintiff states: "I just fell. You know, it was a surprise to me. I just fell. . . . I just fell and sat I think." (S. Poulos Dep. 33:3-6). Plaintiff landed on her "backside", in a seated position, and does not remember hitting her head or any other part of her body during the fall. (*Id*. 34-35). George Poulos saw that Plaintiff's feet "came from under her" and her feet slid forward on the floor. (G. Poulos Dep. 14:13-21). Plaintiff was lifted from this position by two employees who came to her aid. (*Id*. 35).

Plaintiff and her son also stated that they did not see any debris, liquid, foreign objects, or feel any moisture on the floor. (*Id*. 35; G. Poulos Dep. 16, 41). There is no evidence in the record before the Court that the floor was wet. Plaintiff states that she noticed the floor throughout the restaurant was "shiny." (S. Poulos Dep. 30:5, 57). George Poulos described the reason for the fall as follows: "I think the fact that the floor was slippery. Because I was starting to slip on it. I mean I found it slippery underfoot." (G. Poulos Dep. 16:6-8).

Ms. Bayliss did not see Plaintiff fall as she was walking ahead of Plaintiff and her son at the time of the incident. (Bayliss Dep. 11). Ms. Bayliss testified that Plaintiff was approached by employees who offered to help her up, but she refused stating that she was fine. (*Id*.). Ms. Bayliss inspected the floor and wiped the floor where Plaintiff fell after the incident, but found nothing there. (*Id*. 15-16).

Melanie Sue Neal was the manager on duty at the restaurant on May 28, 2008. (Def. Outback Br. Ex. D, Neal Dep. 5). Ms. Neal did not see Plaintiff fall that day, however, she was notified by a waitress that an elderly woman had fallen. (*Id*.). Upon being informed of the incident, Ms. Neal immediately went to the area in which Plaintiff fell. (*Id*. 6). Ms. Neal inspected the floor, by rubbing her foot on it and touching it with her hand to "make sure there wasn't anything there; if there was so I could wipe it up. There was nothing." (*Id*. 6:10-12). Ms. Neal then went to the back of the restaurant and advised her boss, Adam Headley, of the incident. (*Id*. 8). After speaking with Mr. Headley, Ms. Neal returned to Plaintiff's table to make sure that she was alright. (*Id*. 9). Plaintiff explained to Ms. Neal that she had slipped. (*Id*.).

Ms. Neal testifies that no other customers or employees complained about the floor in that area, nor did anyone else slip on the floor that day. (*Id*. 10). Ms. Neal does not remember the floor being shiny, and she stated that she walked through the restaurant before opening the restaurant. (*Id*. 12).

Adam Headley was the closing manager on the day of the incident, and his duties included overseeing the entire restaurant. (Def. Outback Br. Ex. C, Headley Dep. 5). Within three minutes of being informed of Plaintiff's fall, Mr. Headley went out on to the floor. (*Id*. 7). At that time, Plaintiff was seated at a table. (*Id*.). Upon being told where Plaintiff fell, Mr. Headley got on his

3

hands and knees and inspected the area, felt the floor with his hand, and wiped a linen across approximately four square feet of floor to see if there was anything on the floor he could not see. (*Id*. 8, 20). Mr. Headley felt nothing on the floor and there was nothing but some dirt on the linen. (*Id*.). Mr. Headley confirmed that no other employees or customers complained of the floor being slippery that day. Mr. Headley stated that the floor was cleaned every day. (*Id*. 22).

Plaintiff's physician, Susan Barnes, stated when she inquired of Plaintiff the circumstances regarding her fall, Plaintiff explained that "[s]he really does not know why she fell, she thinks she was being clumsy or that the floor was slippery." (Def. Canamera Br. Ex. A, Barnes Dep. 13).

The floor of the restaurant had been cleaned approximately 12 hours prior to Plaintiff's fall by Olivia Silva, an independent contractor employed by Defendant Canamera. (Def. Canamera Br. ¶ 2). Defendant Canamera had previously entered into a verbal agreement with Defendant Outback to clean the floors of the restaurant pursuant to Defendant Outback's specifications. (*Id*. ¶ 3, Ex. B, Specifications).

Plaintiff filed her original complaint in Circuit Court for the County of Genesee on January 23, 2007. (Notice of Removal 1).

On February 20, 2007, Defendant Outback removed the case to this Court based on diversity jurisdiction. (*Id*.). On July 17, 2007, Plaintiff filed her First Amended Complaint. On April 30, 2008, Magistrate Judge Whalen granted Plaintiff's Motion to File a Second Amended Complaint. Plaintiff alleges negligence and nuisance in her Second Amended Complaint against both Defendants.

## II.   ANALYSIS

A.  **Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

**B.     Premises Liability Negligence Claim**

In the instant case, jurisdiction is based upon diversity of citizenship. 28 U.S.C. § 1332(a)(1). For this reason, the Court must apply Michigan state law to the action. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Both Defendants argue that Plaintiff has failed to set forth a prima facie case of premises liability negligence. Pursuant to Michigan law, a prima facie case of premises liability negligence requires Plaintiff to set forth four elements: duty, breach of that duty, causation, and damages. *Fultz v. Union-Commerce Assocs.*, 470 Mich. 460, 463 (2004).

In Michigan, Plaintiff is considered a business invitee as she was in Defendant Outback's restaurant for commercial purposes. *Stitt v. Holland Abundant Life Fellowship*, 462 Mich. 591, 597 (2000). With respect to invitee status:

> [t]he land owner has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires that landowner to inspect the premises and, depending upon the circumstances, make

any necessary repairs or warn of any discovered hazards. Thus, an invitee is entitled to the highest level of protection under premises liability law.

*Id.* (internal citation omitted); *see also Lugo v. Ameritech Corp.*, 464 Mich. 512, 516 (2001) (citation omitted) (holding an owner "owes a duty to an invitee to exercise reasonable case to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land."). However, "with the axiom being that the duty is to protect invitees from *unreasonable* risks of harm, the underlying principle is that even though invitors have a duty to exercise reasonable care in protecting their invitees, they are not absolute insurers of the safety of their invitees." *Bertrand v. Ford*, 449 Mich. 606, 614 (1995) (citation omitted).

### 1. Causation

Defendant Outback argues that Plaintiff cannot sustain her negligence claim because she has not set forth any evidence that Defendant Outback breached its duty for the reason there is no evidence of a hazardous or dangerous condition on the land. The Court finds that this analysis is more accurately analyzed as an alleged lack of causation, rather than duty. Defendant Canamera also contends Plaintiff's negligence claim fails for lack of causation.

As Plaintiff has set forth no direct evidence of negligence or a dangerous condition on the land, Plaintiff's claim of negligence is based upon circumstantial evidence, or what has been called *res ipsa loquitur*. The Michigan Supreme Court has stated:

> Whether phrased as *res ipsa loquitur* or circumstantial evidence of negligence, it is clear that such concepts have long been accepted in this jurisdiction. The time as come to say so. We, therefore acknowledge the Michigan version of *res ipsa loquitur* which entitles a plaintiff to permissible inference of negligence from circumstantial evidence.

*Jones v. Porretta*, 428 Mich. 132, 150 (1987). "The major purpose of the doctrine is to create at

least an inference of negligence when the plaintiff is unable to prove the actual occurrence of a negligent act." *Id*. Pursuant to Michigan's version of this doctrine, Plaintiff must establish:

(1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence,

(2) the event must have been caused by an agency or instrumentality within the exclusive control of the defendant,

(3) the event must not have been due to any voluntary action or contribution on the part of the plaintiff, and

(4) evidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff.

*Debusscher v. Sam's East, Inc.*, 505 F.3d 475 (6th Cir. 2007) (citation omitted).

In the instant case, Plaintiff, her son, and Defendant Outback's employees all confirm there was no water, debris, moisture or residue on the floor where Plaintiff fell. Plaintiff stated to her doctor that she simply fell and might have just been clumsy. No other customer or employee complained the floor was slippery nor did any other customer or employee fall that day.

Plaintiff contends that there is a genuine issue of material fact as to whether the floor was "slippery" such that summary judgment should be denied. Plaintiff notes that she stated that she believed the floor was slippery and shiny and her son noticed the same.

Plaintiff requests the Court consider the hearsay statement contained in George Poulos' deposition and upon which Plaintiff relies to evidence a question of fact regarding whether the floor was slippery. (*See* G. Poulos Dep. 23). George Poulos states that he heard another unnamed patron state "The floor is slippery. Geez, are you okay," after his mother fell. (*Id*. 23:2-3). Without substantive analysis or argument, Plaintiff avers that this statement can be considered for the reason that it is an excited utterance pursuant to Fed. R. Evid. 803(2). "There are three elements of an excited utterance: First, there must be an event startling enough to cause nervous excitement;

8

Second, the statement must be made before there is time to contrive or misrepresent; Finally, the statement must be made while the person is under the stress of the excitement caused by the event." *United States v. Hadley*, 431 F.3d 484, 496 (6th Cir. 2005) (internal quotation omitted). Plaintiff attaches the affidavit of George Poulos, who states that the comment was made "immediately" after his mother fell. (Plf. Br. Ex. 12, G. Poulos Aff. ¶ 3). George Poulos also states that the statement was made in an "excited" voice. (*Id*. ¶ 4).

The Court need not decide whether the overheard remark by an unnamed patron falls within the excited utterance exception to hearsay for the reason that Plaintiff's claims fail even if this testimony is considered.

Plaintiff appears to argue the following: Plaintiff fell, Plaintiff equivocates the floor may have been slippery, hence a dangerous condition on the land which Defendants likely created or of which Defendant Outback should have been aware.

In *Debusscher*, the Sixth Circuit Court of Appeals held a plaintiff had set forth sufficient evidence of *res ipsa loquitur* where a portable basketball hoop had fallen on a seven-year-old child who touched it. *Id*. at 481-82. The Sixth Circuit noted that the basketball hoop had a hallow base which should have been filled with sand or water to stabilize the hoop, however, there was no evidence in the record that this was ever done. *Id*. at 481. The Sixth Circuit concluded: "[t]he fact that a portable basketball hoop on display in a store should not fall over if properly maintained, even if 'touched' by a seven-year-old child, raises an inference of negligence on the part of the store and shifts the burden of rebutting that inference to the defendant." *Id*.

Unlike *Debusscher* where an unrestrained basketball hoop fell on top of a customer, Plaintiff's claim fails to set forth an event that does "not ordinarily occur without someone's

9

negligence." Indeed, there is testimony from Plaintiff herself that she doesn't know how she fell, and from Plaintiff's treating physician that she admitted she may have fallen due to her own clumsiness – this also undercuts any contention that Plaintiff could not have contributed to the fall herself. Further, because there is no evidence of debris, water, moisture, or any other visible substance on the floor at the time of the fall, nor any other complaints of "slipperiness", Plaintiff has failed to show that the condition was caused by Defendant Outback or Defendant Canamera.

The Court notes that the Michigan Court of Appeals has held, "[w]e are aware of no precedent for the proposition that a dry floor, without more, presents a dangerous condition on the land or constitutes a hazard." *Millhisler v. Manzoni*, No. 253559, 2005 WL 2171433 *3 (Mich. Ct. App. Sept. 8, 2005) (unpublished).

Although Plaintiff has set forth the excited utterance of one unnamed customer who witnessed the fall, this statement alone does not create a genuine issue of material fact regarding causation. This one statement, in light of the complete dearth of evidence of a dangerous condition, constitutes a mere scintilla of evidence and a non-moving party cannot create a genuine issue of material fact with mere allegations or a scintilla of evidence. *Bailey*, 106 F.3d at 145.

For these reasons, the Court grants summary judgment to both Defendants on Plaintiff's negligence claim.

### 2. Defendant Outback, Notice

Alternatively, Plaintiff cannot set forth a prima facie case of negligence against Defendant Outback because Plaintiff has failed to present evidence that Defendant Outback's employees created the "dangerous condition" or should have known of the condition. Pursuant to Michigan

law, a store owner is liable for injuries from an unsafe condition only if the condition is caused by the store owner or its employees' negligence or, "if otherwise caused, were known to the storekeeper or is of such a character or has existed a sufficient length of time that he should have had knowledge of it." *Clark v. Kmart Corp.*, 465 Mich. 416, 419 (2001); *Whitmore v. Sears, Roebuck & Co.*, 89 Mich. App. 3, 8-9 (1979) (citing *Serinto v. Borman Food Stores*, 380 Mich. 637, 640-41 (1968)).

In the instant case, there is evidence from Defendant Outback's employees that the restaurant's floors were cleaned in the middle of the night by Defendant Canamera, and Ms. Neal did a walk through of the store before it opened that day. (*See* Neal Dep. 12 & Headley Dep. 22). Ms. Neal testified that she saw nothing on the floor when she did her walk through between one and two p.m. (Neal Dep. 12). Plaintiff did not enter the restaurant until 5 p.m.

Plaintiff argues that Defendant Outback cannot claim lack of notice as a defense in the instant action because Defendant Outback created the dangerous condition. Plaintiff avers that because Defendant Outback's employees cleaned the floor prior to the restaurant opening that day, and there is no evidence that "someone else tampered with the floor to create the too slippery condition," then the inference is that Defendant Outback created the slippery condition. However, Plaintiff has misinterpreted the record, Defendant Outback's employee Ms. Neal testified she did a "walk through" of the store before it opened, she did not clean it.

To the extent Plaintiff could argue that Defendant Outback was on notice of the dangerous condition, the Court rejects this argument. The record is devoid of any evidence of any substance, debris, liquid, or moisture which could have been seen by Defendant Outback's employees; indeed, both Plaintiff and her son testified that neither of them saw debris or liquid on the floor after Plaintiff fell. Further, there is testimony that no other customer or employee slipped in that area or

complained of a slippery floor before Plaintiff fell that day.

Regarding constructive notice, Defendant Outback has presented evidence that its employee inspected the floor before the store opened, and evidence that no one saw or complained of anything before or after Plaintiff fell. Plaintiff contends that Defendant Outback had a duty to inspect the floor for substances that were not visible to the "naked eye," however, the Court holds this argument is without merit.

In *Clark*, the Michigan Supreme Court found a defendant grocery store was on constructive notice of a dangerous condition when there was testimony that the grapes upon which the plaintiff slipped were on the ground in a checkout aisle which had been closed for an hour. *Id.*, 465 Mich. at 419-20. There was also testimony in *Clark* that there were footprints through the grapes before the plaintiff fell which gave rise to an inference that the grapes had remained on the floor since the aisle was open. *Id.*

In the present case, there is no testimony from the record which could support an inference of constructive notice. Plaintiff alleges a dry floor was slippery, perhaps from a substance invisible to the naked eye. Unlike the trodden upon grapes in *Clark*, which supported the inference of having been on the floor for at least one hour, there is no evidence in the instant case from which one could properly infer constructive notice of the slipperiness of a dry wood floor. There had been no complaints, no slips, and Plaintiff argues the alleged condition may have been invisible to the naked eye. Therefore, Plaintiff cannot show that Defendant Outback knew or should have known of the alleged slipperiness or shininess of the wood floor before Plaintiff fell.

For these reasons, the Court finds summary judgment is appropriate on the negligence claim as to Defendant Outback.

### 3. **Defendant Canamera, Control and Possession**

Alternatively, to the extent Plaintiff alleges premises liability against Defendant Canamera, this claim must fail for the reason that Plaintiff cannot show that Defendant Canamera was in "possession and control" of the property such that premises liability is proper.[1]

"Premises liability is a specific type of negligence claim based on an injury that arises out of a condition on the property as opposed to an injury arising out of the activity or conduct that created the condition." *Debusscher*, 505 F.3d at 479. As explained *supra*, "[i]n general, a *premises possessor* owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo*, 464 Mich. at 512 (emphasis added).

In the instant case, Plaintiff has failed to show that Defendant Canamera was in possession or control of the premises. Plaintiff has only established that Defendant Canamera cleaned the floors in question the night before Plaintiff fell. Plaintiff contends that "[j]ust because Defendant Outback has a nondelegable duty to Plaintiff pursuant to MCivJI 19.10 this does not mean that Defendant Canamera has no duty to Plaintiff or other customers who would be used the floor Defendant cleaned." (Plf. Resp. at 4). Plaintiff cannot argue that Defendant Canamera had control or possession of the premises some 12 hours after it had cleaned and left the restaurant. Further, Plaintiff has failed to support its tenuous argument with any persuasive or applicable case law.

For these reasons, Plaintiff's premises liability negligence claim against Defendant Canamera

---

[1] Plaintiff appears to base his claim on premise liability as that is the legal standard he sets forth in his brief.

fails.[2]

### C. Nuisance Claim

Pursuant to Michigan law, a private nuisance involves "an invasion of [another's] interest in the private use and enjoyment of land." *Wilson v. Shea*, No. 266044, 2006 WL 1302464 *4 (Mich. Ct. Att. May 11, 2006) (unpublished) (citing *Adkins v. Thomas Solvent Co.*, 400 Mich. 293, 302 (1992)). A public nuisance, on the other hand, is an "unreasonable interference with a common right enjoyed by the public." *Cloverleaf Car Co. v. Wykstra Oil Co.*, 213 Mich. App. 186, 190 (1995). The Michigan Court of Appeals has explained:

> [t]he term "unreasonable interference" includes conduct that (1) significantly interferes with the public's health, safety, peace, comfort, or convenience, (2) is proscribed by law, or (3) is known or should have been known by the actor to be of a continuing nature that produces a permanent or long-lasting, significant effect on these rights.

*Id*. "A private citizen may file an action for a public nuisance against an actor where the individual can show he suffered a type of harm difference from that of the general public. *Id*. As Plaintiff has not set forth any facts which concern the private enjoyment of land, the Court assumes Plaintiff's alleged nuisance claim is based on public nuisance, not private.

The Court finds that summary judgment is appropriate where there is no genuine issue of material fact as to the proximate cause of the slip and fall, and therefore, Plaintiff cannot show that Defendants "interfered" with the public health.

### III. CONCLUSION

---

[2] To the extent Plaintiff was attempting to allege a general negligence claim against Defendant Canamera, the claim fails for lack of causation as discussed, *supra*.

For these reasons, the Court:

(1)     **GRANTS** Defendant Canamera's Motion for Summary Judgment (Dkt. No. 34); and

(2)     **GRANTS** Defendant Outback's Motion for Summary (Dkt. No. 35).

**SO ORDERED.**


                                        s/Paul D. Borman
                                        PAUL D. BORMAN
                                        UNITED STATES DISTRICT JUDGE

Dated:  August 12, 2008

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on August 12, 2008.


                                        s/Denise Goodine
                                        Case Manager

15